IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Lance L. Miles, Jr., | ) | C/A No.: 5:24-6046-BHH-KDW |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | REPORT AND RECOMMENDATION |
| | ) | |
| Donnie Stonebreaker, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

Lance L. Miles, Jr. ("Petitioner") is a state prisoner who filed this pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. This matter is before the court pursuant to 28 U.S.C. § 636(b)(1)(B), and Local Civil Rule 73.02(B)(2)(c) DSC, for a Report and Recommendation on Respondent's Answer and Motion for Summary Judgment. ECF Nos. 24, 25. On March 31, 2025, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the court advised Petitioner of the summary judgment motion, dismissal procedures, and the possible consequences if he failed to respond adequately to Respondent's Motion. ECF No. 26. Petitioner did not file a response to Respondent's Motion. The court issued an order on May 8, 2025, directing Petitioner to advise the court whether he wished to continue with his case and to file a response to Respondent's Motion by June 6, 2025. ECF No. 29. Petitioner filed a reply to the court's May 8 order; however, he failed to file a response to Respondent's Motion. ECF No. 31. On June 11, 2025, the court issued a second order directing Petitioner to file a response to Respondent's Motion by July 2, 2025. ECF No. 29. On July 10, 2025, Petitioner filed a Response to Respondent's summary judgment motion. ECF No. 36. Respondent filed a Reply to Petitioner's Response on July 17, 2025. ECF No. 39.

Having carefully considered the parties' submissions and the record in this case, the undersigned recommends Respondent's Motion for Summary Judgment, ECF No. 25, be granted, and this Petition be denied.

I.     Facts

The South Carolina Court of Appeals ("Court of Appeals") summarized the facts of this case as follows:

> While scanning parcels for illegal drugs at the Federal Express office in West Columbia, agents from the Lexington County Sheriff's Office became suspicious of a package. They arranged for a controlled delivery to the listed address, which was within an apartment complex. Surveilling the delivery, they observed the delivery person ring the doorbell and leave the package by the front door. A few moments later, an agent noticed Miles exit a nearby apartment and begin walking around the parking lot. The agent then saw a young female emerge from the delivery address. She looked at the box, got on her phone, quickly hung up and went back inside. Miles then got on his phone while walking towards the box. Miles picked up the box and started back to his apartment. Seeing the agents advancing to intercept him, he tried to ditch the box. The agents apprehended and handcuffed him.
>
> Agent Edmonson immediately questioned Miles about the contents of the box. Miles claimed he did not know what was inside. Edmonson then asked if there were drugs inside the box; Miles responded there probably were, but he did not know what kind. At this point, Edmonson read Miles his *Miranda* rights and asked Miles again whether there were drugs in the box. Miles again responded the box could contain drugs, but he did not know what kind. Upon obtaining a search warrant and Miles' consent, the agents opened the box and discovered three hundred pills that a chemist later testified contained a total of nine grams of oxycodone. Edmonson next asked Miles to write down everything he knew about the box and the drugs. Edmonson then reread Miles his *Miranda* rights, and Miles wrote a statement admitting he had been paid one hundred dollars to pick up the box, someone named "Mark" had called him to pick it up, and the "owner" was a "Stacks" from Tennessee.
>
> Edmonson then wrote out two questions. First, "Did you know drugs are in the parcel 'box'?" Miles wrote, "Yes." The second question and answer--related to Miles' admission that he had previously picked up packages for money--were redacted and not presented to the jury.

Miles was indicted for trafficking in illegal drugs, in violation of section 44-53-370(e)(3). He did not testify at his trial and moved unsuccessfully for directed verdict, arguing in part there was insufficient evidence he knew the box contained oxycodone. During the jury charge, the trial court gave the following instruction:

> Mr. Miles is charged with trafficking in illegal drugs and in this case we are referring to [o]xycodone. The State must prove beyond a reasonable doubt that the Defendant knowingly delivered, purchased, brought into this state, provided financial assistance or otherwise aided, abetted, attempted or conspired to sell, deliver, purchase, or bring into this state and was knowingly in actual or constructive possession or knowingly attempted to become in actual or constructive pos[session] of the [o]xycodone. Possession may be either ... actual or constructive.

The trial court charged that the State bore the burden of proving the amount of oxycodone was more than four grams. The trial court further instructed that the State had to prove criminal intent, which required a "conscious wrongdoing," and that intent may be inferred from the conduct of the parties and other circumstances. After deliberating for some time, the jury asked the following question: "Does the [S]tate have to prove that the defendant knowingly brought into the state four grams or more of [o]xycodone or just any amount of illegal drugs in order to consider this trafficking?"

The trial court, over Miles' objection, replied to the jury as follows:

> [T]he law in South Carolina is the State does not have to prove that the Defendant knew that the drugs in the package were [o]xycodone, just that he knew that the package contained illegal drugs. However, the State does have to prove beyond a reasonable doubt that the illegal drugs that were in the package w[ere] more than four grams of [o]xycodone.

The jury later returned with a verdict of guilty. Because Miles had at least two prior drug convictions, he was sentenced to the mandatory minimum term of twenty-five years . . .

App. 469–70.[1]

---

[1] Citations to "App." refer to the Appendix for Petitioner's trial transcript and Post-Conviction Relief ("PCR") Proceedings and the page numbers on the top of the page. That appendix is available at ECF Nos. 24-1 to 24-3 in this habeas matter.

II.     Procedural History

Petitioner was indicted at the March 2014 term of the Lexington County Grand Jury on trafficking in illegal drugs. App. 665–66. Petitioner proceeded to a jury trial on February 11-12, 2015, before the Honorable Thomas A. Russo, Circuit Court Judge. App. 1 *et. seq*. Petitioner was represented by Robert Theo Williams, Sr., Esquire, and Assistant Solicitors Micah Caskey and Casey Rankin represented the State. App. 1. The jury found Petitioner guilty as indicted, and Judge Russo sentenced Petitioner to 25-years imprisonment. App. 356–58, 363.

Petitioner appealed his conviction to the Court of Appeals. App. 365–99. On appeal, Petitioner was represented by Appellate Defender John H. Strom, of the South Carolina Commission on Indigent Defense, Division of Appellate Defense. *Id.* Attorney Strom filed a final brief of appellant on June 2, 2016, raising the following issues:

I.      The trial court erred reversibly by instructing the jury that the State did not need to prove that Appellant knew the drugs in the package he possessed were oxycodone; rather, for Appellant to be guilty of trafficking, the State only needed to prove that Appellant knew the package contained any illegal drugs.

II.     The trial erred reversibly by refusing to grant a directed verdict acquitting Appellant of trafficking in illegal drugs where the State presented no direct or substantial circumstantial evidence that Appellant knew that the package he possessed contained oxycodone as required by S.C. Code Ann. § 44-53-370(e)(3)(a).

III.    Appellant's right against self-incrimination as guaranteed by the Fifth and Fourteenth Amendments to the U.S. Constitution was violated by the introduction of his statements to police where the first statement was the product of an interrogation by officers who failed to advise Appellant of his *Miranda*[1] rights and his subsequent statements were tainted by the initial violation and the product of an involuntary waiver.

A.  The court erred in admitting statements made by Appellant prior to officers advising Appellant of his *Miranda* rights and obtaining a valid waiver of those rights where Appellant clearly was in custody based upon the totality of the circumstances.

4

B. The trial court erred in admitting statements made by Appellant subsequent to the officer advising him of his *Miranda* rights and obtaining an involuntary waiver of those rights because the statement was tainted by the initial violation where the same officer questioned Appellant in the same location with no temporal break between the post-advisement interrogation and the prior, unwarned interrogation.

_____

[1] *Miranda v. Arizona,* 384 U.S. 436 (1966).

App. 370. The State filed a final brief of respondent, App. 402–47, and Petitioner filed a final reply brief of appellant. App. 451–66. On August 23, 2017, the Court of Appeals filed a decision affirming Petitioner's conviction. App. 468–77. Petitioner filed a petition for rehearing, and his petition was denied on October 19, 2017. App. 478–86, 488. Petitioner filed a petition for writ of certiorari on November 14, 2017, and the State filed its return on December 13, 2017. App. 490–516, 518–43. The South Carolina Supreme Court filed an order on October 18, 2018, denying the petition for writ of certiorari. App. 545.

Petitioner filed an Application for Post-Conviction Relief ("PCR") on January 11, 2019, (2019-CP-32-00214). App. 546–51. Petitioner asserted he was being held in custody unlawfully because of ineffective assistance of trial and appellate counsel. App. 548, 553–62. The State filed a return and partial motion to dismiss, and a motion for a more definite statement on May 29, 2019. App. 563–69. Petitioner filed an amended PCR application on December 10, 2021. App. 571–72. A PCR motion hearing convened on December 15, 2021, before the Honorable R. Lawton McIntosh, Circuit Court Judge. App. 573–645. Petitioner was present and represented by Attorney Ashley A. McMahan, and Senior Assistant Attorney General Megan Jameson appeared on behalf of the State. *See id.* Petitioner, Petitioner's ex-girlfriend Jennifer Gillespie, and Plaintiff's trial attorney Theo Williams testified at the hearing. *Id.* The PCR court denied and dismissed

Petitioner's PCR Application with prejudice in an order filed on June 6, 2022, making the following findings of fact and conclusions of law:

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

Applicant has alleged various claims of ineffective assistance of trial counsel and asserts that as a result of counsel's purported errors, he is entitled to relief in the form of vacation of his conviction and sentence and a remand back to the court of general sessions for a new trial.

Under the Uniform Post-Conviction Procedures Act, an applicant may seek post-conviction relief upon the following types of allegations:

1. That the conviction or the sentence was in violation of the Constitution of the United States or the Constitution or laws of the state.
2. That the court was without jurisdiction to impose sentence;
3. That the sentence exceeds the maximum authorized by law;
4. That there exists evidence of material facts, not previously presented and heard that requires vacation of the conviction or sentence in the interest of justice;
5. That his sentence has expired, his probation, parole or conditional release unlawfully revoked, or he is otherwise unlawfully held in custody or other restraint; or
6. That the conviction or sentence is otherwise subject to collateral attack upon any ground of alleged error heretofore available under any common law, statutory or other writ, motion, petition, proceeding or remedy[.]

S.C. Code Ann. § 17-27-20(A).

In a post-conviction relief action, the applicant bears the burden of proving the allegations by a preponderance of the evidence. Butler v. State, 286 S.C. 441, 442, 334 S.E.2d 813, 814 (1985); Rule 71.1(e), SCRCP.

This Court has thoroughly reviewed the record in its entirety, including the trial transcript, the appellate records, and the record for this current action. Additionally, this Court heard the testimony presented at the evidentiary hearing and was able to observe the witnesses presented at the evidentiary hearing, which allowed the Court to scrutinize the credibility of all witnesses presented. Based on this comprehensive review, this Court finds Applicant has failed to meet his burden of proof as to any of his allegations and finds this action must be denied and dismissed with prejudice. Set forth below are the relevant findings of facts and conclusions of law as required pursuant to S.C. Code Ann. §17-27-80 (1985).

Ineffective Assistance of Counsel

Applicant has alleged trial counsel was constitutionally ineffective in his representation for five specific allegations as set forth in his amended application. After a thorough review of all evidence presented, this Court finds Applicant has failed to meet his requisite burden of proof as to each allegation of ineffective assistance of counsel and denies each allegation, which will be specifically addressed below.

Applicant, like all other defendants, has a right to the assistance of effective counsel as provided by the Sixth Amendment to the United States Constitution. U.S. Const, amend. VI; Strickland v. Washington, 466 U.S.168 (1984); Lomax v. State, 379 S.C. 93, 665 S.E.2d 164 (2008). Applicant has the burden of proving the allegations in his post-conviction relief action, and when alleging that counsel was constitutionally ineffective, he must prove that "counsel's conduct so undermined the proper functioning of the adversarial process that it cannot be relied upon as having produced a just result." Strickland, 466 U.S. at 686

Strickland does not guarantee perfect representation, only a "'reasonably competent attorney.'" 466 U. S. at 687 (quoting McMann v. Richardson, 397 U.S. 759, 770 (1970)). Representation is constitutionally ineffective only if it "so undermined the proper functioning of the adversarial process" that the defendant was denied a fair proceeding. Strickland, 466 U.S. at 686. Just as there is no expectation that competent counsel will be a flawless strategist or tactician, an attorney may not be faulted for a reasonable miscalculation or lack of foresight or for failing to prepare for what appear to be remote possibilities. Id.

In evaluating allegations of ineffective assistance of counsel, the reviewing court applies the two-pronged test outlined in Strickland, 466 U.S. 668. First, Applicant must prove that counsel's performance was deficient. Cherry v. State, 300 S.C. 115, 117, 386 S.E.2d 624, 625 (1989). Under this prong, the court measures an attorney's performance by its unreasonableness under prevailing professional norms. Cherry, 300 S.C. at 117, 386 S.E.2d at 6.15 (quoting Strickland, 466 U.S. at 690). The proper measure of performance is whether the attorney provided representation within the range of competence required in criminal cases. Butler v. State, 286 S.C. 441, 442, 334 S.E.2d 813, 814 (1985). "Counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Id. (citing Strickland, 466 U.S. at 690). Applicant must overcome this presumption to receive relief. Cherry,

300 S.C. at 118, 386 S.E.2d at 625. Second, counsel's deficient performance must have prejudiced Petitioner such that "there is a reasonable probability that, but for counsel's professional errors, the result of the proceeding would have been different." <u>Cherry</u>, 300 S.C. at 117-18, 386 S.E.2d at 625.

The standards do not establish mechanical rules; the ultimate focus of inquiry must be on the fundamental fairness of the proceeding whose result is being challenged. A court need not first determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, that course should be followed. <u>Strickland</u>, 466 U.S. 668.

Moreover, <u>Strickland</u> does not require a finding of ineffectiveness merely for deviation from some rigid rule of representation. Rather, <u>Strickland</u> requires the post-conviction relief applicant to prove "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." <u>Id.</u> at 697. Therefore, the function of the post-conviction relief court is to determine if "in light of all the circumstances, the identified acts or omissions were outside the wide range of professional competent assistance" required of a criminal defense attorney." <u>Id</u>. at 690.

Although courts may not indulge "post hoc rationalization" for counsel's decision making that contradicts the available evidence of counsel's actions, <u>Wiggins v. Smith</u>, 539 U.S. S10, 526-527 (2003), neither may they insist counsel confirm every aspect of the strategic basis for his or her actions. There is a "strong presumption" that counsel's attention to certain issues to the exclusion of others reflects trial tactics rather than "sheer neglect." <u>Yarborough v. Gentry</u>, 540 U.S. 1, 8 (2003). After an adverse verdict at trial even the most experienced counsel may find it difficult to resist asking whether a certain strategy might have been better, and, in the course of that reflection, to magnify their own responsibility for an unfavorable outcome. <u>Strickland</u>, however, calls for an inquiry into the objective reasonableness of counsel's performance, not counsel's subjective state of mind. <u>Id</u>. at 688; <u>Harrington v. Richter</u>, 562 U.S. 86 (2011).

With respect to prejudice, an applicant must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." <u>Strickland</u>, 466 U.S. at 694. It is not enough

"to show that the errors had some conceivable effect on the outcome of the proceeding." Id. at 693. Counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id. at 687. See Harrington, 562 U.S. 86.

"Surmounting Strickland's high bar is never an easy task." Padilla v. Kentucky, 559 U.S. 356, 371 (2010), and the strong societal interest in finality has "special force with respect to convictions based on guilty pleas." United States v. Timmreck, 441 U.S. 780, 784 (1979). An ineffective assistance of counsel claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the Strickland standard must be applied with scrupulous care lest "intrusive post-trial inquiry" threaten the integrity of the very adversary process the right to counsel is meant to serve. Strickland, 466 U.S. at 689-690. Even under de novo review, the standard for judging counsel's representation is a most deferential one. Unlike a later reviewing court, the attorney observed the relevant proceedings knew of materials outside the record and interacted with the client, with opposing counsel, and with the judge. It is "all too tempting" to "second-guess counsel's assistance after conviction or adverse sentence." Id. at 689; See also Bell v. Cone, 535 U.S. 685, 702 (2002); Lockhart v. Fretwell, 506 U.S. 364, 372 (1993). The question is whether an attorney's representation amounted to incompetence under "prevailing professional norms," not whether it deviated from best practices or most common custom. Strickland, 466 U.S. at 690.

In assessing prejudice under Strickland, the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently. Wong v. Belmontes, 558 U.S. 15 (2009); Strickland, 466 U.S. at 693. Instead Strickland asks whether it is "reasonably likely" the result would have been different. Id. at 696. This does not require a showing that counsel's actions "more likely than not altered the outcome" but the difference between Strickland's prejudice standard and a more-probable-than-not standard is slight and matters "only in the rarest case." Id. at 693, 697. The likelihood of a different result must be substantial, not just conceivable. Id. at 693. Harrington, 562 U.S. 86.

This Court finds Applicant has failed to meet his requisite burden of proof as to each allegation of ineffective assistance of trial counsel. Each allegation is addressed below.

*Allegation that counsel failed to present a defense that Applicant did not know there were drugs in the package rather than that Applicant did not know what kind of drugs were in the package*

Initially, Applicant asserts trial counsel was ineffective for failing to present a proper defense on behalf of Applicant. Specifically, Applicant asserts that the defense should have been that Applicant did not know that any drugs were in the package, not that Applicant did not know what type of drugs were in the package. At the evidentiary hearing, Applicant denied knowing there were drugs in the package, but then acknowledged he thought it contained marijuana based on the comments of the law enforcement officers when they approached him and during his arrest. He did not learn the box contained oxycodone until officers opened the box. He testified he was supposed to pick up the box and deliver it to someone who was waiting in the apartment complex parking lot. Applicant denied ever giving any oral statements to law enforcement and asserted he did not provide a statement until his written statement. He asserted he never told law enforcement illegal drugs were in the box and he insisted he did not know anything illegal was in the box. However, Applicant later acknowledged that he told law enforcement he knew illegal drugs were in the package in his written statement and elaborated that he thought marijuana was in the box.

In response to this allegation, counsel testified Applicant gave oral and written statements to law enforcement wherein he admitted that there were illegal drugs in the package but denied knowing the specific type of drug. He testified that he moved to suppress these statements but once the suppression motion was denied, the only plausible defense that he could make is that Applicant was not guilty because the trafficking in illegal drugs statute required Applicant to have the requite knowledge of the specific drug for a conviction. He elaborated that Applicant's initial statement to law enforcement, given before he was provided with Miranda warnings, was that he did not know what was in the package, and counsel testified he wanted this statement to come in as a matter of strategy as further evidence that he did not have the requisite mental state required for trafficking in illegal drugs. He again testified that all of Applicant's subsequent oral and written statements were that he knew the package contained illegal drugs and, accordingly, the only viable defense was that Applicant lacked the necessary mental state based on a lack of specific knowledge as to drug type.

This Court finds this allegation is directly refuted by the record, which clearly establishes that Applicant repeatedly informed law enforcement that he knew

10

illegal drugs were in the package, albeit he did not know what specific type of substance was in the package. His written statement includes the following:

> QUESTION: DID YOU KNOW DRUGS ARE IN THE PARCEL "BOX"?
> ANSWER: YES.

(ROA p. 344). Based on Applicant's written and oral statements to law enforcement, trial counsel made a strategic decision to craft a defense strategy based on a lack of requisite mental status for trafficking in illegal drugs pursuant Section 44-53-370(e)(3)). This was the only plausible defense counsel could have made based on the evidence that was going to be admitted at trial following the denial of his motion to suppress Applicant's statements. This argument was the subject of Applicant's direct appeal and resulted in a published opinion analyzing the required knowledge for a conviction in trafficking in illegal drugs. State v. Lance Leon Miles, 421 S.C. 154, 805 S.E.2d 204 (Ct. App. 2017). Counsel was not deficient for his strategic decision to present this defense on behalf of Applicant. This allegation is denied.

### Allegation that counsel failed to adequately challenge the Miranda warnings and detention

As his second ground for relief Applicant asserts trial counsel was ineffective for failure to properly challenge his statements and detention. However, the record directly refutes this allegation. Counsel properly made a motion  to dismiss Applicant's various oral and written statements and the trial court conducted a thorough hearing pursuant to Jackson v. Denno. During this hearing, the State presented testimony from three law enforcement officers who testified as to their interactions with Applicant at the scene. Following the testimony from the three law enforcement witnesses, Petitioner moved to suppress his oral and written statements and argued he was under duress when he made the statements. Petitioner also argued there was conflicting testimony as to whether Edmonson questioned Petitioner prior to giving any Miranda warnings. The State conceded Petitioner's statements made pre-Miranda warnings were inadmissible and it would not seek to introduce those in its case in chief. The trial court ruled Petitioner's oral and written statements made following the advisement of Miranda warnings were given knowingly, freely, and voluntarily, and therefore were admissible. However, the trial court determined the portions of Petitioner's statements pertaining to his prior involvement in retrieving packages for money must be redacted. The record is clear that Applicant did indeed challenge the admission of Applicant's statements and was able to successfully keep out Applicant' s initial, pre-Miranda statement based

on a concession from the State (which he then later admitted based on a matter of sound trial strategy to present to the jury that Applicant initially denied anything illegal was in the package). This Court finds this allegation is without merit and denies it.

### *Allegation that counsel was ineffective for failing to ask for a lesser-included offense at trial*

As a third allegation, Applicant asserts trial counsel was ineffective for failing to request a jury instruction on a lesser-included defense at trial. However, this claim fails as a matter of law, as the only evidence presented at trial was that Applicant was in possession of over four grams of Oxycodone, the requisite amount for trafficking in illegal drugs pursuant to Section 44-53-370(e)(3)). Specifically, the evidence established Applicant was in possession of three-hundred pills of Oxycodone that amounted to nine grams of Oxycodone, a Schedule II drug. (R. 244-60). Accordingly, as the only evidence presented was that Applicant possessed over the requisite amount of Oxycodone for trafficking he was not entitled to a jury instruction on any lesser-included offenses. See Sellers v. State, 362 S.C. 182, 190, 607 S.E.2d 82, 86 (2005) ("Second, as to the trafficking charge, Respondent did not present evidence that he possessed less than the minimum required for trafficking. In fact, the only evidence before the jury was that the amount of methamphetamines in question would constitute trafficking. In addition, the State presented the only evidence as to the amount of drugs at issue, which included testimony that Respondent possessed enough methamphetamines to warrant a trafficking charge. As a result, Respondent was not entitled to a lesser-included charge, such as possession with intent to distribute for the trafficking charge."), abrogated on other grounds by Smalls v. State, 422 S.C. 174, 810 S.E.2d 836 (2018). Counsel was not deficient for failing to request a jury instruction that was not supported by the evidence and could not have been given as a matter of law. This Court finds this claim must be denied.

### *Allegation that counsel was ineffective for failing to adequately challenge the search warrant, the chain of custody, and the interception of the package*

As a fourth allegation, Applicant asserts trial counsel was ineffective for failing to adequately challenge the search warrant, the chain of custody, and the interception of the package. Trial counsel testified that he did not challenge the search warrant because law enforcement had sufficient probable cause based on Applicant's statements admitting the package contained illegal drugs and the canine's alert that

the package contained illegal substances. All of this evidence was presented during the thorough <u>Jackson v. Denno</u> hearing before trial and established that law enforcement had probable cause to obtain a search warrant. The only evidence before this Court is that the magistrate had sufficient probable cause to issue a search warrant. <u>See</u> <u>State v. Dupree</u>, 354 S.C. 676, 685, 583 S.E.2d 437, 442 (Ct. App. 2003) ("The magistrate's task in determining whether to issue a search warrant is to make a practical, common sense decision concerning whether, under the totality of the circumstances set forth in the affidavit, including the veracity and basis of knowledge of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found  in the particular place to be searched."(citing <u>Illinois v. Gates</u>, 462 U.S. 213, 238 (1983)). Accordingly, Applicant bas failed to meet his burden of establishing any deficiency of counsel. This claim is denied.

### *Allegation that counsel was ineffective for failing to call witnesses at trial who would testify regarding the package*

As a fifth allegation, Applicant  asserts trial counsel was ineffective for failing to call witnesses who would testify at trial regarding the package. At the evidentiary hearing, Applicant testified there were witnesses who could have been investigated when the case was "fresh", such as an unidentified black female who was the sister of the guy who was supposed to get the box or his girlfriend.

The sole witness Applicant presented was his girlfriend at the time of the incident, Jennifer Gillespie. She testified that she was present when Applicant was arrested, although she clarified that she was in her apartment when law enforcement first approached Applicant and did not come outside until law enforcement had descended on Applicant. She testified that Applicant was being told to get on the ground by numerous officers with guns drawn. She estimated that more than ten law enforcement cars were present the scene, and they were a mix of marked and unmarked cars. She testified the package was already on the ground when she came out of her apartment, and she never saw Applicant holding the package. She testified she talked to trial counsel before the trial but was not asked to testify on Applicant's behalf.

When questioned about this allegation, counsel testified that he discussed calling witnesses with Applicant. He testified that the only possible witness who would have anything to add would have been the woman who came out of the apartment and looked at the box while on the phone, but that they were not able to identify

13

her. He testified Applicant did not provide him the names of any other potential witnesses.

This Court finds Applicant cannot meet his requisite burden as to this allegation. Initially, Applicant failed to present the woman who he asserts was related to the person picking up the box. Since this witness was not called, the claim must fail as a matter of law. See Bannister v. State, 333 S.C. 298, 303, 509 S.E.2d 807, 809 (1998) (noting our courts have "repeatedly held a PCR applicant must produce the testimony of a favorable witness or otherwise offer the testimony in accordance with the rules of evidence at the PCR hearing in order to establish prejudice from the witness' failure to testify at trial''); Glover v. State, 318 S.C. 496, 499, 458 S.E.2d 538, 540 (1995) (holding a PCR applicant's mere speculation as to what the witnesses' testimony would have been cannot, by itself, satisfy the burden of showing prejudice); Smith v. State, 404 S.C. 493, 502, 745 S.E.2d 378, 383 (Ct. App. 2012) (holding an applicant failed to meet his burden of proof where he failed to present testimony from any of the witnesses he assets should have been called at trial).

As to the sole witness that Applicant did present, his then-girlfriend provided testimony that lacked credibility when compared with the record. For example, she testified that more than ten law enforcement vehicles were present on the scene when the record reflects that a much, much smaller number were present and all the vehicles were unmarked. Moreover, her testimony would not have changed the result of Applicant's trial, as it would not have resulted in suppression of Applicant's statements or the package in a pre-trial hearing, and there is not a reasonable probability of a different result at trial had she testified. Accordingly. this allegation is denied.

## CONCLUSION

Based on all the foregoing. this Court finds Applicant has not established any other constitutional violations or deprivation that would require this Court to grant his application for post-conviction relief. Therefore, this application for post-conviction relief is denied and dismissed with prejudice.

App. 652–63 (errors in original).

Petitioner appealed the dismissal of his PCR application. ECF No. 24-5. Appellate

Defender Lara M. Caudy, of the South Carolina Commission on Indigent Defense, Division of

Appellate Defense, represented Petitioner on appeal. *Id.* Attorney Caudy filed a *Johnson*[2] petition for writ of certiorari in the South Carolina Supreme Court on January 13, 2023, raising the following issue:

> Did the post-conviction relief (PCR) court err by finding trial counsel was not ineffective when counsel failed to object to the admission of Petitioner's statements to law enforcement pursuant to <u>Missouri v. Seibert</u>, 542 U.S. 600 (2004) and <u>State v. Navy</u>, 386 S.C. 294, 688 S.E.2d 838 (2010), where the statements were the result of a two phase interrogation of Petitioner who was in custody and was not advised of his Miranda rights until after he made incriminating statements, and when Petitioner was prejudiced by counsel's deficient performance because if counsel had properly objected, the trial judge would have excluded the statements and the outcome of Petitioner's trial would have been different, or if the trial judge erroneously admitted the statements, Petitioner would have prevailed on appeal?

*Id.* at 3. Attorney Caudy asserted the petition was without legal merit to warrant a new trial  and requested permission to withdraw from further representation. *Id.* at 17. The South Carolina Supreme Court transferred the petition to the Court of Appeals on March 21, 2023. ECF No. 24-7. The Court of Appeals denied the petition for writ of certiorari on March 26, 2024. ECF No. 24-8. The Remittitur was issued on April 12, 2024. ECF No. 24-9.  Petitioner filed an initial habeas petition on October 23, 2024. ECF No. 1. Petitioner filed an Amended habeas Petition on January 2, 2025. ECF No. 15.

III.     Discussion

A.     Federal Habeas Issues

Petitioner raises the following issues in his Amended Federal Petition for a Writ of Habeas Corpus, quoted verbatim:

---

[2] *Johnson v. State*, 364 S.E.2d 201 (S.C. 1988) (applying the factors of *Anders v. California*, 386 U.S. 738 (1967), to post-conviction appeals).

**Ground One:** Misdirected the jury about the law regarding trafficking in illegal drugs the S.C. Code Ann. 44-53-370(e)A(3)

Supporting Facts: A straight forward reading of both States North Carolina and 10 more states instructions makes clear that prosecutors must prove beyond a reasonable doubt that a defendant knowingly trafficked in a specific drug. Also (The Golden Rule law: statutory interpretation).

**Ground Two:** Amendment IV (1791) Amendment XIV (1868)

Supporting Facts: Statements that were obtained in violation of Miranda v. Arizona petitioner's right against self incrimination by introducing petitioner statements of an interrogation by officer who failed to advise petitioner of his Miranda. Doug Edmonson admitted on oath he put Mr. Miles in handcuffs then started interrogating without providing Miranda warnings

**Ground Three:** The trial erred reversibly by refusing to grant direct verdict acquitting petitioner of trafficking in illegal drugs

Supporting Facts: The State presented no direct or substantial circumstantial evidence that petitioner knew that the package which was sealed closed he possessed contained oxycodone as required by S.C. Code Ann 44-53-0370(e)(3)(A)

**Ground Four:** Burden-shifting and the fate of the modern drug mule under the 18 U.S.C. 3553 (F) Statutory Safety Valve

Supporting Facts: By introducing Appellant's statement to the jury when police 1st statement was the product of an interrogations by officers who failed to advise Appellant of his Miranda, and telling this to the jury was a burden shift and the time sentence was very harsh when Judge Russo said I was just a mule in this situation and wasn't selling oxycodone, so instead of a lesser offense he gave me the max sentence of the sentence requires 25 years without any parole. Mandatory!

ECF No. 15 at 5–10 (Errors in original).

B.    Standard for Summary Judgment

The court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed.

16

R. Civ. P. 56(a). The movant bears the initial burden of demonstrating that summary judgment is appropriate; if the movant carries its burden, then the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). If a movant asserts that a fact cannot be disputed, it must support that assertion either by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials;" or "showing . . . that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

In considering a motion for summary judgment, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248. Further, while the federal court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, *see, e.g., Cruz v. Beto*, 405 U.S. 319, 323 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts that set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact when none exists. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 391 (4th Cir. 1990).

C.     Habeas Corpus Standard of Review

1.     Generally

Because Petitioner filed his petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review of his claims is governed by 28 U.S.C. § 2254(d), as amended. *Lindh v. Murphy*, 521 U.S. 320, 336 (1997); *Breard v. Pruett*, 134 F.3d 615, 618 (4th Cir. 1998). Under the AEDPA, federal courts may not grant habeas corpus relief unless the underlying state adjudication: (1) resulted in a decision that was contrary to, or involved an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented at the state court proceeding. 28 U.S.C. § 2254(d)(1)(2); *see Williams v. Taylor*, 529 U.S. 362 (2000). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 4ll.

a.     Deference to State Court Decisions

Courts afford deference to state courts' resolutions of the habeas claims of state prisoners. *See Bell v. Cone*, 543 U.S. 447, 455 (2005). The Supreme Court has provided further guidance regarding the deference due to state-court decisions. *Harrington v. Richter*, 562 U.S. 86 (2011); *Cullen v. Pinholster*, 131 S. Ct. 1388 (2011). To obtain habeas relief from a federal court, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, 562 U.S. at 103. "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.*

18

at 102. The Court further stated: "If this standard is difficult to meet, that is because it was meant to be." *Id.*; *see Richardson v. Branker*, 668 F.3d 128, 137–44 (4th Cir. 2012) (quoting *Harrington* extensively and reversing district court's grant of writ based on his ineffective assistance of counsel claims).

In interpreting § 2254(d)(1) and discussing the federal courts' role in reviewing legal determinations made by state courts, the United States Supreme Court held as follows:

> [A] federal court may grant a writ of habeas corpus if the relevant state-court decision was either (1) "contrary to . . . [clearly] established Federal law as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States.

*Williams v. Taylor*, 529 U.S. 362, 404–405 (2000) (quoting from § 2254(d)(1)). "Clearly established Federal law in § 2254(d)(1) refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Carey v. Musladin*, 549 U.S. 70, 74 (2006) (quoting *Williams*, 529 U.S. at 412). In considering whether a state-court decision is "contrary to" clearly established federal law, the federal court may not grant relief unless the state court arrived at a conclusion opposite to that reached by the Supreme Court on a legal question, the state court decided the case differently than the Court has on facts that are materially indistinguishable, or if the state court "identifie[d] the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applie[d] that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 405-13. The "unreasonable application" portion of § 2254(d)(1) "requires the state court decision to be more than incorrect or erroneous[,]" it "must be objectively unreasonable," which is a higher threshold. *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003) (internal citation omitted).

Section 2254(e)(1) requires the federal court give a presumption of correctness to state-court factual determinations and provides that a petitioner can only rebut such a presumption by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1). Accordingly, a habeas petitioner is entitled to relief under § 2254(d)(2), only if he can prove, by clear and convincing evidence, that the state court unreasonably determined the facts in light of the evidence presented in state court.

b.     Ineffective Assistance of Counsel

The Sixth Amendment provides a criminal defendant the right to effective assistance of counsel in a criminal trial and first appeal of right. In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court announced a two-part test for adjudicating ineffective assistance of counsel claims. First, a petitioner must show that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms. *Id.* at 687. Second, the petitioner must show that this deficiency prejudiced the defense. *Id.* at 694. The United States Supreme Court's 2011 decisions cited previously elaborate on the interplay between *Strickland* and § 2254, noting the standards are "both highly deferential," and "when the two apply in tandem, review is doubly so." *Harrington*, 562 U.S. at 105 (internal quotation marks omitted); *Pinholster*, 131 S. Ct. at 1403. When a petitioner raises in a § 2254 habeas petition an ineffective-assistance-of-counsel claim that was denied on the merits by a state court, "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable[,]" not "whether defense counsel's performance fell below *Strickland's* standard." *Harrington*, 562 U.S. at 101. "For purposes of § 2254(d)(1), 'an *unreasonable* application of federal law is different from an *incorrect* application of federal law.'" *Id.* (citing *Williams*, 529 U.S. at 410) (emphasis in original). "A state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Id.*

20

2.      Procedural Bar

Federal law establishes this court's jurisdiction over habeas corpus petitions. 28 U.S.C. § 2254. This statute permits relief when a person "is in custody in violation of the Constitution or laws or treaties of the United States[,]" and requires that a petitioner present his claim to the state's highest court with authority to decide the issue before the federal court will consider the claim. 28 U.S.C. § 2254(a)-(b). The separate but related theories of exhaustion and procedural bypass operate in a similar manner to require that a habeas petitioner first submit his claims for relief to the state courts. A habeas corpus petition filed in this court before the petitioner has appropriately exhausted available state-court remedies or has otherwise bypassed seeking relief in the state courts will be dismissed absent unusual circumstances detailed below.

a.      Exhaustion

Section 2254 contains the requirement of exhausting state-court remedies and provides as follows:

(b)     (1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court, shall not be granted unless it appears that—

        (A)     the applicant has exhausted the remedies available in the courts of the State; or

        (B)     (i) there is an absence of available State corrective process; or

                (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

(2) An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.

(3) A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.

> (c)     An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

The statute requires that, before seeking habeas corpus relief, the petitioner first must exhaust his state court remedies. 28 U.S.C. § 2254(b)(1)(A). "To satisfy the exhaustion requirement, a habeas petitioner must present his claims to the state's highest court." *Matthews v. Evatt*, 105 F.3d 907, 911 (4th Cir. 1997). Thus, a federal court may consider only those issues that have been properly presented to the highest state courts with jurisdiction to decide them.

In South Carolina, a person in custody has two primary means of attacking the validity of his conviction: (1) through a direct appeal; or (2) by filing an application for PCR. State law requires that all grounds be stated in the direct appeal or PCR application. Rule 203 SCACR; S.C. Code Ann. § 17-27-10, *et seq.*; S.C. Code Ann. § 17-27-90; *Blakeley v. Rabon*, 221 S.E.2d 767 (S.C. 1976). Strict time deadlines govern direct appeals and the filing of a PCR in the South Carolina courts. A PCR must be filed within one year of judgment, or if there is an appeal, within one year of the appellate court decision. S.C. Code Ann. § 17-27-45.

Furthermore, in filing a petition for habeas relief in the federal court, a petitioner may present only those issues that were presented to the South Carolina Supreme Court or the South Carolina Court of Appeals. *See State v. McKennedy*, 559 S.E.2d 850, 853 (S.C. 2002) (holding "that in all appeals from criminal convictions or post-conviction relief matters, a litigant shall not be required to petition for rehearing and certiorari following an adverse decision of the Court of Appeals in order to be deemed to have exhausted all available state remedies respecting a claim of error.") (quoting *In re Exhaustion of State Remedies in Criminal and Post-Conviction Relief*, 471 S.E.2d 454, 454 (S.C. 1990)).

b.      Procedural Bypass

Procedural bypass, sometimes referred to as procedural bar or procedural default, is the doctrine applied when a petitioner who seeks habeas corpus relief as to an issue failed to raise that issue at the appropriate time in state court and has no further means of bringing that issue before the state courts. In such a situation, the person has bypassed his state remedies and, as such, is procedurally barred from raising the issue in his federal habeas petition. Procedural bypass of a constitutional claim in earlier state proceedings forecloses consideration by the federal courts. *See Smith v. Murray*, 477 U.S. 527, 533 (1986). Bypass can occur at any level of the state proceedings if the state has procedural rules that bar its courts from considering claims not raised in a timely fashion.

The South Carolina Supreme Court will refuse to consider claims raised in a second appeal that could have been raised at an earlier time. Further, if a prisoner has failed to file a direct appeal or a PCR and the deadlines for filing have passed, he is barred from proceeding in state court. If the state courts have applied a procedural bar to a claim because of an earlier default in the state courts, the federal court honors that bar.  As the United States Supreme Court explains:  [state procedural rules promote] not only the accuracy and efficiency of judicial decisions, but also the finality of those decisions, by forcing the defendant to litigate all of his claims together, as quickly after trial as the docket will allow, and while the attention of the appellate court is focused on his case. *Reed v. Ross*, 468 U.S. 1, 10–11 (1984).

However, if a federal habeas petitioner can show both (1) "'cause' for noncompliance with the state rule[,]" and (2) "'actual prejudice resulting from the alleged constitutional violation[,]'" the federal court may consider the claim. *Murray*, 477 U.S. at 533 (quoting *Wainwright v. Sykes*, 433 U.S. 72, 84 (1977)). When a petitioner has failed to comply with state procedural requirements

and cannot make the required showing of cause and prejudice, the federal courts generally decline to hear the claim. *Murray v. Carrier*, 477 U.S. 478, 496 (1986).

If a federal habeas petitioner has failed to raise a claim in state court and is precluded by state rules from returning to state court to raise the issue, he has procedurally bypassed his opportunity for relief in the state courts and in federal court. A federal court is barred from considering the filed claim (absent a showing of cause and actual prejudice). In such an instance, the exhaustion requirement is technically met, and the rules of procedural bar apply. *See Teague v. Lane*, 489 U.S. 288, 297–98 (1989); *Matthews*, 105 F.3d at 915 (citing *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991); *George v. Angelone*, 100 F.3d 353, 363 (4th Cir. 1996).

3.    Cause and Actual Prejudice

Because the requirement of exhaustion is not jurisdictional, this court may consider claims that have not been presented to the South Carolina Supreme Court in limited circumstances in which a petitioner shows sufficient cause for failure to raise the claim and actual prejudice resulting from the failure, *Coleman*, 501 U.S. at 750, or that a "fundamental miscarriage of justice" has occurred. *Murray*, 477 U.S. at 495–96. A petitioner may prove cause if he can demonstrate ineffective assistance of counsel relating to the default, show an external factor that hindered compliance with the state procedural rule, or demonstrate the novelty of a particular claim. *Id*. Absent a showing of cause, the court is not required to consider actual prejudice. *Turner v. Jabe*, 58 F.3d 924, 931 (4th Cir. 1995). However, if a petitioner demonstrates sufficient cause, he must also show actual prejudice in order to excuse a default. *Murray*, 477 U.S. at 492. To show actual prejudice, the petitioner must demonstrate more than plain error.

IV.    Analysis

   A.  Ground One

In Ground One, Petitioner alleges the trial court misdirected the jury about the law on trafficking in illegal drugs under S.C. Code Ann. § 44-53-370(e)(A)(3). ECF No. 15 at 5; 15-1 at 1–7. Petitioner argues a plain reading of this statute requires that Petitioner knew he was possessing oxycodone. *Id.* at 6.

Respondent moves for summary judgment on Petitioner's Ground One claim contending Petitioner's claim is not a cognizable federal habeas claim as Petitioner's Ground One claim asks the court to reexamine the state court's interpretation of state law. ECF No. 24 at 18–20.

In his response, Petitioner contends his constitutional right to a fair trial and due process of law was violated by the trial court's jury instructions concerning Petitioner's knowledge of the type of drug that was in the package. ECF No. 36 at 8–9.

In Reply, Respondent alleges Petitioner cannot now convert his Ground One claim to a due process violation as this argument was not raised in Petitioner's direct appeal. ECF No. 39 at 3. Respondent also claims the Court of Appeals' opinion on Petitioner's Ground One claim shows the court's interpretation of the challenged state statute was firmly an interpretation of state law. *Id.*

In his direct appeal, Petitioner argued the trial court erred in refusing to instruct the jury that the State needed to prove Petitioner knew the drugs in the package he possessed was oxycodone. App. 370. Petitioner contended the trial court's instructions "inaccurately stated the law and were based on a forced interpretation of 44-53-370(e)(3), as well as South Carolina's other trafficking statutes." App. 381.

In denying Petitioner's jury instruction claim, the Court of Appeals reviewed S.C. Code Ann. 44-53-370(e)(3) which provides, in part:

> Any person who knowingly sells, manufactures, cultivates, delivers, purchases, or brings into this State, or who provides financial assistance or otherwise aids, abets, attempts, or conspires to sell, manufacture, cultivate, deliver, purchase, or bring into this State, or who is *knowingly* in actual or constructive possession or who *knowingly* attempts to become in actual or constructive possession of . . four grams or more of any morphine, opium, salt, isomer, or salt of an isomer thereof, including heroin, as described in Section 44-53-190 or 44-53-210, or four grams or more of any mixture containing any of these substances, is guilty of a felony which is known as "trafficking in illegal drugs" . . .

App. 471. The court noted Petitioner's contention that the term "knowingly" as used in the subsection (e) applies to each element of the trafficking offense, including the specific type of drugs listed in (e)(3). *Id*. In interpretating S.C. Code Ann. § 44-53-370(e) and the definition and application of the term "knowingly" as used in the statute, the court examined the legislative intent and the text of the statute. App. 472–73. In determining the meaning of the term "knowingly," the Court of Appeals examined and discussed South Carolina caselaw. App. 473–75. The Court of Appeals determined that the legislative intent was for the term "knowingly" as used in the statute to not require the defendant to know the identity of the controlled substance to be guilty. *Id.*

The undersigned finds Petitioner's Ground One claim solely concerns matters of state law or the interpretation of state law and therefore fails to state a claim cognizable in federal habeas. *See* 28 U.S.C. § 2254(a) (a petition for writ of habeas corpus should be granted "only on the ground that [petitioner] is in custody in violation of the Constitution or laws or treaties of the United States."); *Estelle v. McGuire*, 502 U.S. 62, 67–69 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."); *Larry v. Branker*, 552 F.3d 356, 368 (4th Cir. 2009) ("Because

this particular argument rests solely upon an interpretation of [state] statutory law, it is simply not cognizable on federal habeas review."). To the extent Petitioner now argues a violation of his due process rights concerning the State court's interpretation of this statute, this claim was not presented to the trial court or South Carolina appellate courts, and is therefore procedurally barred. *See State v. Williams*, 401 S.E.2d 168, 169 (S.C. 1991); *State v. McKennedy*, 559 S.E.2d 850, 853 (S.C. 2002). As Petitioner is not entitled to federal habeas relief on this claim, the undersigned recommends Ground One be dismissed.

### B. Ground Two

Petitioner states a Fourth and Fourteenth Amendment claim. ECF No. 15 at 7. Petitioner alleges the officer placed him in handcuffs then started interrogating him without providing *Miranda* warnings. *Id*. Petitioner contends statements that were obtained in violation of *Miranda v. Arizona*[3] violated his rights. *Id.*

Respondent moves for summary judgment arguing the review of Petitioner's Fourth Amendment claim is not available pursuant to the doctrine enunciated in *Stone v. Powell.*[4] ECF No. 24 at 21. Respondent contends Petitioner was afforded a full and fair opportunity to raise any Fourth Amendment search and seizure or unlawful arrest claims at trial and on appeal, but he did not do so. *Id.*

In Response, Petitioner argues his rights were violated when statements obtained in violation of *Miranda* were introduced at his trial. ECF No. 36 at 3.

In Reply, Respondent contends Petitioner continues to assert a Fourth Amendment violation occurred. ECF No. 39 at 1. Respondent notes that Petitioner has not raised a clear ground

---

[3] 384 U.S. 436 (1966).
[4] 428 U.S. 465 (1976).

that his Fifth Amendment rights have been violated, and contends to the extent Petitioner is raising

a Fifth Amendment claim, this claim is defaulted. *Id.* at 1–2.

Liberally construed, Petitioner contends his rights were violated when his statements made

in violation of *Miranda* were introduced during trial. ECF No. 15 and 36. Petitioner presented his

claims concerning the admissibility of his statements in his direct appeal. App. 476.  In denying

Petitioner's claim, the Court of Appeals explained:

> Miles contends the series of three statements he gave to law enforcement should
> have been suppressed because the agents engaged in the "question-first"
> manipulation of *Miranda* forbidden by *Missouri v. Seibert*, 542 U.S. 600 (2004),
> and *State v. Navy*, 386 S.C. 294, 688 S.E.2d 838 (2010). He asserts Agent
> Edmonson's immediate questioning of him upon arrest was a custodial
> interrogation triggering *Miranda*. At trial, the State conceded as much and agreed
> not to present evidence of Miles' first two statements. But, during a later bench
> conference, Miles agreed to their admissibility, which is unsurprising as this
> strategy allowed Miles to get his theory of the case--that he didn't know what kind
> of drugs were in the package--before the jury without having to take the stand. *See*
> *State v. Bryant*, 372 S.C. 305, 642 S.E.2d 582 (2007) (stating an issue conceded at
> trial cannot be argued on appeal).
>
> The issue of whether admission of Miles' third, written statement violated *Seibert*
> and *Navy* is unpreserved. Miles did not raise these cases or the "question-first"
> principle to the trial court. *See State v. Byers*, 392 S.C. 4381 446, 710 S.E.2d 55,
> 59 (2011) ("For an admissibility error to be preserved, the objection must include
> a specific ground 'if the specific ground was not apparent from the context.'"
> (quoting Rule 103(a)(l), SCRE)); *In re Michael H.*, 360 S.C. 540, 546, 602 S.E.2d
> 729, 732 (2004) ("In order to preserve an issue for appeal, it must be raised to and
> ruled upon by the trial court. In other words, the trial court must be given an
> opportunity to resolve the issue before it is presented to the appellate court."
> (citation omitted)).
>
> Even if the issue was preserved, any error in admitting the redacted written
> statement was harmless. The statement was cumulative and could not have
> reasonably contributed to the verdict. It did not contradict Miles' earlier statements
> that he did not know the type of drugs in the box, and added he was paid one-
> hundred dollars to retrieve it. *See State v. Martucci*, 380 S.C. 232, 261, 669 S.E.2d
> 598, 614 (Ct. App. 2008) ("The admission of improper evidence is harmless where
> the evidence is merely cumulative to other evidence."). We cannot imagine the
> vague references to others involved packed any punch with the jury.

App. 476–77.

    The undersigned finds Petitioner's Ground Two claim is not properly before the court as this matter was not properly raised to the South Carolina state appellate courts, and is therefore procedurally barred. *See Coleman v. Thompson*, 501 U.S. 722, 750 (1991) (explaining that when a petitioner "has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the [petitioner] can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice"); *State v. Williams*, 401 S.E.2d 168 (S.C.1991) (stating that generally issues not raised to and ruled on by the trial court are not preserved for appellate review).

    While the undersigned finds Petitioner's Ground Two claim is procedurally defaulted, or barred from federal habeas review, this claim may be considered by the court if Petitioner can "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750. A petitioner may establish a fundamental miscarriage of justice by showing that he is actually innocent of the crime for which he was convicted. However, to establish "actual innocence," a petitioner must produce new reliable evidence that was not presented at trial to establish his factual innocence. *Royal v. Taylor*, 188 F.3d 239 (4th Cir.1999); *see also Schlup v. Delo*, 513 U.S. 298, 324, 327 (1995) (stating that to demonstrate "actual innocence," a petitioner must present "new reliable evidence ... that was not presented at trial" and "show that it is more likely than not that no reasonable juror would have found [him] guilty beyond a reasonable doubt"). Petitioner's response in opposition to Respondent's motion for summary judgment provides no arguments to meet this standard and fails to demonstrate that, based on any

new reliable evidence, it is more likely than not that no reasonable juror would have found him guilty. *See Schlup*, 513 U.S. at 327–29. Accordingly, Petitioner's Ground Two claim is procedurally barred from federal habeas review, and the Respondent's motion for summary judgment should be granted as to this ground.

       C.  Ground Three

Petitioner claims the trial court erred in failing to grant his motion for a directed verdict on the drug trafficking charges. ECF No. 15 at 8. Petitioner contends the state court failed to present direct or substantial circumstantial evidence that Petitioner knew the seized package contained oxycodone as required by S.C. Code Ann. 44-53-0370(e)(3)(A). *Id.*

Respondent moves for summary judgment on this Ground Three claim arguing that this claim is procedurally defaulted. ECF No. 24 at 22–23. Respondent states that although Petitioner presented this claim in his direct appeal to the Court of Appeals, he failed to raise this claim in his petition for a writ of certiorari to the South Carolina Supreme Court. *Id.* In the alternative, Respondent contends the Court of Appeals' determination on this issue was not contrary to or an unreasonable application of federal law, nor did the decision result in an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. *Id.* at 23–27.

In Response, Petitioner argues the merits of his directed verdict claim. ECF No. 36 at 24–27.

While Petitioner did raise his Ground Three claim about the denial of his request for a directed verdict on direct appeal, *see* App. 370, he failed to include the denial of his directed appeal claim in his petition for discretionary review to the South Carolina Supreme Court. *See* App. 493. Accordingly, Petitioner's Ground Three claim is procedurally barred. *See Coleman*, 501 U.S. 722

(stating that if an issue is not properly raised to the state's highest court and would be procedurally impossible to raise now, then it is procedurally barred from federal habeas review); *See O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999) (explaining claims not raised in petition for discretionary review to state's highest court from intermediate state appellate court on direct review are non-exhausted and therefore procedurally barred from federal habeas review). Petitioner has not shown cause to excuse the procedural default, nor has Petitioner established that failure to review this claim would be a miscarriage of justice. The undersigned recommends Respondent be granted summary judgment on Petitioner's Ground Three claim.

D.  Ground Four

Petitioner alleges a burden shifting and the fate of the modern drug mule claim. ECF No. 15 at 10. Petitioner claims the burden was improperly shifted when his first statement, which was made in violation of *Miranda*, was introduced at trial. *Id*. Petitioner also complains about the length of his sentence complaining he was just a mule and was not selling oxycodone. *Id*.

Respondent moves for summary judgment arguing neither of these grounds are within the purview of this court's review. ECF No. 24 at 27.

In response, Petitioner argues the merits of his claim. ECF No. 36 at 4.

In reply,  Respondent alleges that is it not clear what Petitioner is raising, but he appears to be attempting to show prejudice to excuse the default of his Ground One claim. ECF No. 39 at 2–3.

The undersigned finds Petitioner's Ground Four claims are not properly before this court. To the extent he again challenges the admission of his three statements, as noted *supra*, this claim was procedurally defaulted in state court and therefore cannot be raised to this court in his habeas Petition.  To the extent Petitioner is challenging the length of his sentence, this claim was not raised

31

to the South Carolina appellate courts, and therefore cannot be raised in this court. *Coleman*, 501 U.S. at 750. The undersigned recommends Respondent be granted summary judgment on Petitioner's Ground Four claim.

V.    Conclusion and Recommendation

Based upon the foregoing, the undersigned recommends that Respondent's Motion for Summary Judgment, ECF No. 25, be GRANTED and the Petition be DENIED.

IT IS SO RECOMMENDED.

December 30, 2025
Florence, South Carolina

Kaymani D. West
United States Magistrate Judge

**The parties are directed to note the important information in the attached "Notice of Right to File Objections to Report and Recommendation."**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. [I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation. *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

**Robin L. Blume, Clerk**
**United States District Court**
**Post Office Box 2317**
**Florence, South Carolina 29503**

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).